OPINION OF THE COURT
Kaye, J.
A parolee’s statements to his parole officer, made while the parolee is in custody and in response to the parole officer’s questions about the parolee’s suspected involvement in a crime, are considered compelled unless preceded by Miranda warnings. Consequently, the parolee’s later statements to a police officer, made after Miranda warnings but as part of a continuous interrogation, must be suppressed at trial.
While defendant was on parole for an earlier, unrelated crime, the police began to suspect that he was involved in a *22 recent burglary. A police investigator telephoned defendant’s parole officer, told him there was evidence linking defendant to the burglary, and asked to be notified the next time defendant reported so that he could talk to defendant. About a week later, defendant voluntarily reported to his parole officer —one day after his scheduled appointment. Defendant explained that the lateness was due to fear that his parole might be violated because he had a fight with someone at work. In answer to the parole officer’s general questions, defendant admitted that he had been buying and using marihuana. Telling defendant that he was "on the edge of being violated,” the parole officer had defendant empty his pockets, and when he discovered that defendant was carrying a knife, the officer announced that he was "violating” defendant’s parole and placed him in handcuffs. A search of defendant’s house, to which he consented, resulted in the discovery of drug paraphernalia and defendant’s additional admissions to the use of cocaine as well as marihuana.
The parole officer then began specifically to question defendant — still in handcuffs — about the burglary the investigator had brought to his attention. Defendant admitted his involvement in the burglary, at which point the parole officer telephoned the police. The parole officer asked defendant no more questions but encouraged him to cooperate with the police, adding that the Parole Board would be notified if he did. Upon his arrival shortly thereafter, a police sergeant advised defendant of his Miranda rights and had the handcuffs removed; this was the first time since defendant arrived at the parole officer’s office that he was given Miranda warnings. Defendant waived his right to remain silent and to the assistance of counsel, and again confessed to the burglary — this time in detail — both orally and in writing.
After a Huntley hearing, the court held, first, that defendant’s statement to his parole officer was inadmissible at trial by virtue of his failure to advise defendant of his Miranda rights. Second, the court suppressed defendant’s statements to the police officer on the basis that those later statements— although made after Miranda warnings — were the product of a course of continuous questioning without any break in the interrogation sufficient to attenuate them from the earlier questioning. The Appellate Division affirmed.
The People challenge only the second ruling. They contend that the relationship of parole officer and parolee is funda *23 mentally different from that of police officer and suspect; that a parole officer’s focus is rehabilitative, and inherently nonadversarial and noncoercive; and that parole officers therefore need not give Miranda warnings in interviews with their parolees (see, 1 LaFave & Israel, Criminal Procedure § 6.10, at 542). There having been no impropriety or illegality in the parole officer’s questioning, the People reason, there was no basis for the conclusion that defendant’s statement to his parole officer tainted his later statements to the police. Defendant, by contrast, argues that answers given by parolees during interviews with their parole officers are invariably compelled in a constitutional sense due to the inherently coercive effect of the parolee’s legal obligation to answer truthfully, that the unwarned statement was therefore illegally obtained, and that the later statements were necessarily tainted.
In that a parole officer may function both as counselor and as law enforcement agent in questioning a parolee about possible criminal activity, there is some merit in the position of each party, militating against the imposition of a single rule covering all types of parole officer-parolee encounters. As we recognized in People v Ronald W. (24 NY2d 732), a distinction can be drawn between "the sort of incommunicado, police-dominated atmosphere of custodial interrogation and overbearing of the subject’s will at which the Miranda rule was aimed”, and questioning by a probation officer directed at helping probationers rehabilitate themselves. (Id., at 734.) There, the defendant had freely come into the Probation Department seeking help for a friend and was not alone and incommunicado during questioning about needle marks on his arm. We concluded that the officer was not acting asa" Taw enforcement’ officer within the spirit or meaning of Miranda v. Arizona” (People v Ronald W., supra, at 735), and Miranda warnings were not required as a prerequisite to admission of defendant’s statements at a revocation hearing. Similarly, in People ex rel. Maiello v New York State Bd. of Parole (65 NY2d 145) we refused to prohibit the use of \m-Mirandized statements made to relator’s parole officer at his parole revocation hearing.
On the other hand, as we recognized in People v Parker (57 NY2d 815, affg for reasons stated in 82 AD2d 661), a parole officer also may assume the role of a law enforcement agent. In Parker, we affirmed an order barring the use of defendant’s unwarned statements to his parole officer at his criminal trial. *24 There, defendant’s parole officer was aware when he first questioned defendant that criminal charges were already pending and that defendant was represented by an attorney.
While we are urged to demarcate categories when Miranda warnings are and are not required, the facts of this case do not call upon us to decide whether the nature of the parole officer-parolee relationship is such that even routine, noncustodial questioning must be preceded by Miranda warnings if it is concerned with possible criminal activity. Here it is plain that the parole officer was no longer acting in his role as defendant’s counselor when he questioned defendant about the burglary. Rather, he had long since decided to violate defendant’s parole. The officer had already taken defendant into custody, had kept him handcuffed while obtaining his consent and then performing a search of his apartment that revealed additional incriminating evidence, and had gotten further statements about defendant’s drug use. It was only then, well after the parole officer had ample information on which to determine that defendant had not complied with the conditions of his parole, and had in fact informed defendant that the decision was already made, that he began to question defendant — still in handcuffs — about the burglary in which the police had expressed interest.
At that point, the parole officer’s actions were the functional equivalent of those of a police officer. At the least, once defendant was physically taken into custody and handcuffed, the potential for coercion was as great as that which inheres in custodial interrogation by a police officer, and in accordance with our previous decisions under State law, administration of the Miranda warnings was required to dispel that potential coercion in order for defendant’s statement to be admissible in a criminal trial (see, People ex rel. Maiello v New York State Bd. of Parole, 65 NY2d, at 146-147, supra).
In these circumstances, then, we cannot accept the People’s contention that the failure to advise defendant of his Miranda rights was proper, and that no presumption of compulsion should be drawn from it. Having rejected that claim, we are bound by the undisturbed finding of the trial court that defendant’s subsequent Mirandized statements were not sufficiently attenuated from the first, unwarned statement to dispel the coercive effect of the earlier questioning (see, People v Chappie, 38 NY2d 112). Indeed, before us the People do not even dispute the fact that the questioning of defendant was virtually uninterrupted.
*25 Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed.